IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ALEX CLARFELD, individually and on behalf of his minor child, P.M.,<br><br>Plaintiff,<br><br>vs.<br><br>DEPARTMENT OF EDUCATION, STATE OF HAWAII<br><br>Defendant. | CIVIL NO. 20-00234 JAO-KJM<br><br>**ORDER AFFIRMING IN PART AND REVERSING IN PART ADMINISTRATIVE HEARING OFFICER'S APRIL 27, 2020 DECISION** |

## ORDER AFFIRMING IN PART AND REVERSING IN PART ADMINISTRATIVE HEARING OFFICER'S APRIL 27, 2020 DECISION

This appeal, brought by Plaintiff Alex Clarfeld, individually and on behalf of his minor child, P.M. ("Plaintiff"), against the Department of Education, State of Hawai'i ("DOE") seeks reversal of the Findings of Fact, Conclusions of Law and Decision ("Decision") issued on April 27, 2020 in DOE-SY1920-027.  After careful consideration of the parties' briefs, the arguments of counsel, the applicable law, and the Administrative Record, the Court hereby REVERSES IN PART AND AFFIRMS IN PART the Decision for the reasons set forth below.

## I.  BACKGROUND

### A.    P.M.'s Placement at the Maui Autism Center

P.M. is eligible for special education and related services under the Individuals with Disabilities Education Act ("IDEA") and Chapter 60 of the

Hawaiʻi Administrative Rules ("HAR") due to Autism Spectrum Disorder.  ECF No. 12-16 at 7.[1]  When the Administrative Hearing Officer (the "AHO") issued the Decision, P.M. was fourteen years old.  *Id.*

In November 2018, following a separate due process hearing, Administrative Hearing Officer Jennifer Young ("AHO Young") determined that P.M.'s previous Individualized Education Program ("IEP"), dated May 3, 2018, was deficient.  *Id.* at 9.  AHO Young determined that P.M.'s placement for the 2018–2019 schoolyear was the Maui Autism Center ("MAC") and ordered that the DOE pay P.M.'s tuition and related expenses for that year.  *Id.*

**B.    The 2019–2020 IEP Process**

In January 2019, the DOE sent three notices to Plaintiff to schedule an annual IEP meeting, noting that P.M.'s annual IEP review was due that month.  *Id.* at 10.  Plaintiff refused to meet for an IEP meeting prior to May 2019, noting that AHO Young's order continued through the end of the schoolyear, and that P.M.'s previous IEP was issued in May 2018.  *Id.*  Plaintiff further objected to the DOE conducting any IEP meetings without Plaintiff's presence.  *Id.*  Plaintiff and the DOE agreed on a date of May 14, 2019 for the IEP meeting.  *Id.*

---

[1]  Based on a review of the briefs and the parties' representations at oral argument, most of the facts in this appeal are not in dispute.  The Court therefore bases its recitation of the facts primarily on the AHO's Decision.

At the May 14, 2019 IEP meeting, Plaintiff was accompanied by several MAC IEP team members, including its president, CEO, and two Registered Behavior Technicians ("RBTs"). *Id.* at 11. A MAC private Board Certified Behavior Analyst ("BCBA") was sick and unable to attend the meeting. *Id.* The DOE's representatives included the principal, Francoise Bell ("Bell"), from P.M.'s home school, Lokelani Intermediate School ("Lokelani"); the District Educational Specialist ("DES"), Maria Robinson ("Robinson"); and the Student Services Coordinator ("SSC"), Stephanie Vigneaux ("Vigneaux"). *Id.* The DOE's BCBA was also sick and did not attend the IEP meeting. *Id.*

Due to the absence of both BCBAs, the IEP team agreed that the meeting should be continued. *Id.* at 12. Plaintiff did not object to the continuation of the IEP meeting, and the IEP team members from MAC agreed that it would be beneficial for the BCBAs to be present to complete the IEP, as P.M.'s behavior was a significant concern that had to be addressed in the IEP. *Id.* Plaintiff testified at the due process hearing that he objected to the continuation of the IEP meeting, but the AHO concluded that the record did not support this assertion. *Id.* The IEP team further decided the IEP should be completed before deciding P.M.'s placement for the following schoolyear. *Id.* at 13.

The IEP meeting was continued to June 7, 2019, a date requested by Plaintiff.  *Id.*  The meeting was then rescheduled to June 17, 2019 for unknown reasons.  *Id.*

On June 16, 2019, Plaintiff filed a complaint with the State Complaints Office, alleging that the outcome of the next scheduled IEP meeting had been predetermined to change P.M.'s placement from MAC to a public school; that the May 14, 2019 IEP meeting should not have been continued; and that Bell, Robinson, and the DOE's BCBA should not have been part of the IEP meeting.  *Id.* at 13–14.  MAC's president notified the DOE of Plaintiff's complaint and stated that Plaintiff did not want to proceed with any IEP meetings prior to the resolution of the complaint.  *Id.* at 13.  The DOE then cancelled the June 17, 2019 IEP meeting, pending a decision on Plaintiff's complaint.  *Id.*

P.M. continued to attend MAC, and MAC continued to invoice the DOE for its services for the months between August and October of 2019.  *Id.* at 14.  On August 12, 2019, the State Complaints Office issued a decision denying that the DOE had committed any of the violations of the IDEA raised in Plaintiff's complaint.  *Id.*  The next day, the SSC sent a notice to Plaintiff regarding the selection of IEP meeting dates in September 2019, offering to meet on September 10, September 12, September 26, or September 30.  *Id.*; ECF No. 15-4 at 35. Plaintiff responded that he would not be available to attend the continued IEP

meeting until October 30, 2019, and the DOE set the meeting for that date.  ECF No. 12-16 at 14.

At the October 30, 2019 IEP meeting, Plaintiff informed the DOE that P.M. had been living with him in Wailuku since the summer of 2019, and not at the Kihei address that the DOE had previously listed for P.M.  *Id.* at 16.  The IEP team discussed P.M.'s areas of performance, goals, and supports and services at Plaintiff's request, even though these subjects (aside from those relating to behavior) had been discussed at the May 2019 IEP meeting.  *Id.*  The IEP team further discussed P.M.'s behavioral performance and goals and incorporated those subjects into the IEP, along with additional supports and services recommended by MAC team members.  *Id.*  Both Plaintiff and MAC team members were allowed to provide information and suggestions about P.M.'s performance, goals, and supports during the May 2019 and October 2019 IEP meetings.  *Id.* at 17.

With the aid of a worksheet and led by Bell, the IEP team discussed the factors for P.M.'s educational placement based on the least restrictive environment ("LRE") spectrum.  *Id.*  The IEP team discussed all seven levels of placement on the spectrum, ranging from a general education setting to a homebound/hospital placement.  *Id.* at 18.  The IEP team discussed the Public Separate Facility option for approximately twenty minutes.  *Id.*  MAC team members expressed the following concerns regarding this option:  P.M.'s prior adverse experience at a

public home school; there were only two other students at the Public Separate Facility; there were security guards at the Public Separate Facility; and the benefits of the Public Separate Facility the DOE listed on the worksheet did not appear to be in place at that time.  *Id.*

Following an hour-long discussion about the levels of placement, Bell provided the DOE's offer of a Free and Appropriate Public Education ("FAPE") to Plaintiff, which was to implement P.M.'s IEP at his LRE by placing P.M. at the Public Special Facility.  *Id.* at 19.  Bell also informed the IEP team that a transition plan was needed for P.M., that an additional IEP meeting would be scheduled for that purpose, and that any additional supports or services that may be needed for P.M.'s new placement could be added to his IEP at that time.  *Id.*  Plaintiff and MAC members of the IEP team requested that they be able to visit the Public Separate Facility, but were denied at that time.  *Id.*; ECF No. 17-1 at 93 ("MS. ROBINSON:  We're not going to see it right now, because we're finalizing the IEP.  But, yes, you could always set up a visit to see it.").  Plaintiff asked Bell to hear additional input from MAC team members, and after further discussion, Plaintiff announced that he was rejecting the DOE's offer of a FAPE.  ECF No. 12-16 at 19–20.

On November 7, 2019, the DOE issued a letter to Plaintiff requesting a selection of dates for a further IEP meeting to discuss P.M.'s transition plan to the Public Separate Facility. *Id.* at 20.

On November 8, 2019, the DOE issued a Prior Written Notice ("PWN") regarding the October 30, 2019 IEP meeting to Plaintiff, which listed all the services that would be provided to P.M., including supplementary aids, services and extended schoolyear services, and a summary of the educational and non-educational benefits that would be provided. *Id.* at 20.

On January 13, 2020, Plaintiff and a MAC BCBA and RBT visited the Public Separate Facility and spoke with the SPED Teacher about the program. *Id.*

### C.    Plaintiff's Due Process Complaint

After MAC's president notified Plaintiff that since August 2019 the DOE had not paid P.M.'s tuition, on October 29, 2019 (the day before the October 30, 2019 IEP meeting),[2] Plaintiff filed an IDEA Impartial Due Process Complaint, which is the subject of this action. *Id.* at 14–15. Plaintiff amended his due process hearing request on November 14, 2019. *Id.* at 5.

Following a pre-hearing motion by Plaintiff, the AHO issued an order on December 31, 2019, ruling that P.M.'s "stay-put" placement was MAC, and that

---

[2]  The October 30, 2019 IEP meeting took place even though Plaintiff filed a Due Process Complaint the previous day.

P.M. should therefore remain at MAC during the pendency of the administrative proceedings, but denied Plaintiff's request for reimbursement of tuition from August 2019 to October 2019.  ECF No. 11-7 at 4–5.  P.M. continues to attend MAC at the DOE's expense during the pendency of this appeal.  *See id.*at 3.

The due process hearing proceeded over eight days during the period from February 4, 2020 to February 25, 2020.  ECF No. 12-16 at 5–6.  The AHO issued the Decision on April 27, 2020.  *See generally id.*

## D.    The AHO's Decision

### 1.    The AHO's Rulings on Plaintiff's Due Process Complaint

The AHO ruled that the DOE violated the IDEA by failing to have an IEP in place for P.M. at the start of the 2019–2020 schoolyear.  *Id.* at 33–37.  The AHO also found, however, that Plaintiff "contributed significantly" to the DOE's failure to establish an IEP by the start of the schoolyear.  *Id.* at 37.  The AHO thus refused to order the DOE to reimburse Plaintiff for tuition for August 2019 through October 2019, holding that Plaintiff failed to prove that MAC was an appropriate placement for P.M. and that the equities weighed against reimbursement in light of Plaintiff's conduct as well as concerns regarding MAC's billing practices.  *Id.* at 48–52.

Regarding Plaintiff's specific contentions, the AHO ruled as follows:

1)      The AHO rejected Plaintiff's argument that he was entitled to tuition reimbursement for August 2019 through October 2019 under the stay put rule, holding that the IDEA did not require the DOE to reimburse Plaintiff for tuition for the period *before* the due process complaint was filed.  *Id.* at 37–38.

2)      The AHO held that Plaintiff failed to prove that the DOE committed a procedural violation of the IDEA by failing to have a valid IEP team in place at the May 2019 and October 2019 IEP meetings.  *Id.* at 38–40.

3)      The AHO concluded that the DOE properly provided Plaintiff with a PWN of the change in P.M.'s educational placement and that no PWN was required prior to the completion of P.M.'s IEP for the 2019–2020 schoolyear.  *Id.* at 40–42.

4)      The AHO held that the DOE did not predetermine P.M.'s IEP and placement in violation of the IDEA.  *Id.* at 42–44.

5)      The AHO rejected Plaintiff's argument that the DOE blocked meaningful parental participation in the IEP process.  *Id.* at 44–46.

6)      Finally, the AHO concluded that Plaintiff failed to prove that the DOE denied P.M. a FAPE by determining that the Public Separate Facility was P.M.'s LRE.  *Id.* at 46–48.

2.     The AHO's Findings Relating to MAC and the Public Separate Facility

The AHO included extensive findings relating to the characteristics and capabilities of both MAC and the Public Separate Facility in the Decision.  *See generally id.*

The AHO found that MAC is not accredited as a school because it does not follow a curriculum that meets graduation requirements as it typically deals with low-functioning students; however, MAC does provide educational services to its clients.  *Id.* at 23.  MAC offers daily access to one home-schooled, neurotypical student:  the daughter of MAC's president and CEO.  *Id.*  In addition, MAC's staff bring their children to MAC to interact with MAC's clients on a regular basis.  *Id.* MAC employs at least one individual who is temporarily certified as a general education teacher by the DOE.  *Id.*

Despite P.M.'s serious behavioral problems, no identifiable behavioral support plan ("BSP") or behavioral intervention plan ("BIP") had been in place for P.M. at MAC.  *Id.* at 24.  However, the MAC BCBA who was unable to attend the May 2019 IEP meeting due to illness had created a BSP for P.M. in preparation for that meeting, but did not keep records of any previous BSPs she may have updated or edited, as she wrote over previous records.  *Id.*  The ethical guidelines of the Behavior Analyst Certification Board provide that records should be kept for seven years after a case is closed.  *Id.* at 30.  The AHO found that "[d]ata collection

10

practices at [MAC] raise questions as to the accuracy of the data records that have been produced as evidence[.]" *Id.* at 24.  Specifically, the AHO found that it was unclear whether P.M.'s support staff at MAC had easy access to written instructions or definitions of behaviors.  *Id.*

The AHO did not receive any evidence containing bills or invoices for MAC's services for August or September 2019, but noted that the total amount invoiced to the DOE for October 2019 was $37,889.86.  *Id.* at 27.  The AHO identified several problems with the October 2019 invoice, including MAC billing the DOE for service hours by RBTs on certain days in which P.M. did not receive services from MAC, along with certain deficiencies in the recording of data relating to P.M.'s services.  *Id.* at 24–25.

The AHO found that the Public Separate Facility is run by a licensed special education teacher ("SPED Teacher") and can accommodate many supports and services for students based on their IEPs, including socialization with neurotypical peers from a neighboring intermediate school, community-based instruction, a functional program to teach life skills to students, and a separate, controlled space for students to accommodate their IEPs.  *Id.* at 21.  The SPED Teacher is responsible for creating an appropriate curriculum for each student based on their educational level, needs, and IEP, and has experience creating such curricula, having been a licensed special education teacher for twenty years and an autism

11

consultant for the DOE for nine years.  *Id.*  The DOE would be able to provide services of RBTs and BCBAs as required by P.M.'s IEP at the Public Separate Facility.  *Id.*

**E.    Plaintiff's Federal Lawsuit**

On May 20, 2020, Plaintiff commenced this action by filing a Complaint against the DOE.  ECF No. 1.  Plaintiff's Complaint challenges each of the conclusions reached by the AHO in the Decision.  *See generally id.*  Plaintiff prays that the Court enforce the automatic injunction that Plaintiff alleges that P.M. enjoys under the stay put rule; reverse the AHO's decision and rule that Plaintiff is the prevailing party; find that P.M.'s private placement and services have been appropriate; order reimbursement for the costs of privately obtained educational and related services; and award Plaintiff his attorney's fees and costs.  *Id.* at 12.

On September 8, 2020, Plaintiff filed his Opening Brief.  ECF No. 36.

On October 23, 2020, the DOE filed its Answering Brief.  ECF No. 37.

On November 6, 2020, Plaintiff filed his Reply Brief.  ECF No. 38.

On November 25, 2020, the Court issued an Entering Order directing the DOE to file a surreply addressing the issue of whether Plaintiff is entitled to private tuition reimbursement for the period between August 1 and August 12, 2019, while his June 16, 2019 state complaint was pending.  ECF No. 40.  The DOE filed its Surreply on November 30, 2020.  ECF No. 41.

## II.  LEGAL STANDARD

The IDEA provides that a court, in reviewing a decision following a due process hearing, "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant relief as the court determines is appropriate."  20 U.S.C. § 1415(i)(2)(C).  "[T]he provision that a reviewing court base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review."  *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982).  Instead, the Court must give "due weight" to the administrative proceedings.  *Id.*; *see L.M. v. Capistrano Unified Sch. Dist.*, 556 F.3d 900, 908 (9th Cir. 2009).

The Court must therefore carefully consider the agency's findings and "endeavor to respond to the hearing officer's resolution of each material issue."  *L.M.*, 556 F.3d at 908 (internal quotation marks and citation omitted).  Moreover, the Court may not simply ignore the administrative findings even though it may independently determine how much weight to give to the same.  *See id.*  Greater deference is accorded to "'thorough and careful'" administrative agency findings.  *Id.* (quoting *Capistrano Unified Sch. Dist. v. Wartenberg*, 59

13

F.3d 884, 892 (9th Cir. 1995)).  The Court is to give deference to a hearings officer's decision "when it 'evinces his [or her] careful, impartial consideration of all the evidence and demonstrates his [or her] sensitivity to the complexity of the issues presented.'"  *J.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 438–39 (9th Cir. 2010) (quoting *County of San Diego v. Cal. Special Educ. Hearing Off.*, 93 F.3d 1458, 1466 (9th Cir. 1996)) (internal quotation marks omitted) (alterations in original).

The burden of proof in IDEA appeals rests with the party challenging the administrative decision.  *See Hood v. Encinitas Union Sch. Dist.*, 486 F.3d 1099, 1103 (9th Cir. 2007).

### III.  DISCUSSION

As an initial matter, the Court affords greater deference to the Decision because of the AHO's careful and thorough findings.

Furthermore, the Court has carefully considered the parties' briefs and has conducted its own review of the record and researched the applicable statutes, regulations, and caselaw.  The Court, however, does not consider the arguments in Plaintiff's Motion for Stay Put and for Reimbursement or his Motion for Partial Summary Judgment as well as the accompanying Reply memoranda for both motions (all submitted to the AHO in the State administrative proceedings), despite Plaintiff's attempt to incorporate by reference those pleadings in his Opening

Brief.  *See* ECF No. 36 at 12 n.6; *Williams v. County of Alameda*, 26 F. Supp. 3d 925, 947 (N.D. Cal. 2014) ("[T]he Court will not consider the arguments that Plaintiff improperly seeks to incorporate by reference.  This Court only considers arguments that are specifically and distinctively raised by the parties in their briefs." (citing *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003))).

## A. Plaintiff's Right to Tuition Reimbursement for August 2019 through October 2019 Due to the DOE's IDEA Violation

Plaintiff argues that the AHO erred in refusing to order the DOE to reimburse Plaintiff for P.M.'s MAC tuition for August 2019 through October 2019. The AHO determined that the DOE violated the IDEA by failing to have an IEP in place for P.M. at the start of the 2019-2020 schoolyear.  ECF No. 12-16 at 33–37. The Court must thus determine whether the AHO properly denied Plaintiff tuition reimbursement despite the DOE's failure to provide P.M. with a FAPE at the start of the 2019–2020 schoolyear.

The IDEA and its implementing regulations allow for reimbursement of private tuition if the educating agency fails to offer a FAPE to children with disabilities:

> If the parents of a child with a disability, who previously received special education and related services under the authority of a public agency, enroll the child in a private preschool, elementary school, or secondary school without the consent of or referral by the public agency, a court or a hearing officer may require the

> agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made FAPE available to the child in a timely manner prior to that enrollment and that the private placement is appropriate. A parental placement may be found to be appropriate by a hearing officer or a court even if it does not meet the State standards that apply to education provided by the [state and local educational agencies].

34 C.F.R. § 300.148(c); *see* 20 U.S.C. § 1412(a)(10)(C)(ii).  Parents "are entitled to reimbursement *only* if a federal court concludes both that the public placement violated IDEA and the private school placement was proper under the Act. " *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 246 (2009) (internal quotation marks and citation omitted).  The first prong can be satisfied when a school district denies a student a FAPE by committing "a procedural error [that] results in the denial of an educational opportunity where, absent the error, there is a 'strong likelihood' that alternative educational possibilities for the student 'would have been better considered.'"  *Doug C. v. Hawaii Dep't of Educ.*, 720 F.3d 1038, 1047 (9th Cir. 2013) (quoting *M.L. v. Federal Way Sch. Dist.*, 394 F.3d 634, 657 (9th Cir. 2005) (Gould, J., concurring in part and concurring in the judgment)).  Even in cases where a court concludes that a school district failed to provide a FAPE and private placement was proper, it "retain[s] discretion to reduce the amount of a reimbursement award if the equities so warrant—for instance, if the parents failed to give the school district adequate notice of their intent to enroll the child in private school."  *Forest Grove Sch. Dist.*, 557 U.S. at 247.

16

The DOE does not contest the AHO's determination that it violated the IDEA and denied P.M. a FAPE.  ECF No. 37 at 25–28.  Thus, to determine whether Plaintiff is entitled to reimbursement for P.M.'s tuition, the Court must review whether P.M.'s placement at MAC was proper and, if so, whether the equities warrant a reduction or elimination of the reimbursement.

      1.    <u>The Propriety of P.M.'s Placement at MAC</u>

To establish "proper" placement, Plaintiff must "demonstrate that the placement provides educational instruction specially designed to meet the unique needs of a handicapped child, supported by such services as are necessary to permit the child to benefit from instruction."  *C.B. v. Garden Grove Unified Sch. Dist.*, 635 F.3d 1155, 1159 (9th Cir. 2011) (internal quotation marks and citation omitted).  The *C.B.* standard is satisfied even if the private school provides "'some, but not all' of the student[']s educational needs; the placement need not 'maximize the child's potential.'"  *Doug C.*, 720 F.3d at 1048 (brackets omitted) (quoting *C.B.*, 635 F.3d at 1159).

The AHO found that the record was "wrought with concerning and questionable practices of [MAC] that do not appear to be helping [P.M.] to the 'maximum extent appropriate, be educated with children who are not disabled.'"  ECF No. 12-16 at 50 (citing 20 U.S.C. § 1412(a)(5)(A)).  While the concerns the AHO raised about MAC are certainly relevant (and are discussed in turn below),

the AHO applied the wrong legal standard,[3] as she essentially examined whether MAC was the LRE under 20 U.S.C. § 1412(a)(5)(A), and not whether MAC was a proper placement under the standard adopted in *C.B.*

In light of the AHO's failure to apply the correct legal standard to the issue of whether MAC was a proper placement, the Court has the discretion to decide the issue or to remand the case to the AHO to decide the issue. *See Doug C.*, 720 F.3d at 1048.  The Court elects to decide the issue in light of the well-developed record.

The Court first notes that AHO Young had previously decided that P.M. should be placed at MAC for the 2018–2019 schoolyear.  ECF No. 12-16 at 9.  In *Doug C.*, the Ninth Circuit explained:  "Where . . . the private school selected by the parent is the same school that the child has previously attended for several years under IEPs that have been approved by all parties, we think it highly unlikely that the placement does not represent a 'proper' placement." *Doug C.*, 720 F.3d at 1048 (footnote omitted).

Moreover, the record strongly supports a finding that MAC satisfied the *C.B.* standard for a proper placement.  The AHO found that MAC had facilitated interactions between its students and neurotypical students.  ECF No. 12-16 at 23.

---

[3]  Neither Plaintiff nor the DOE apply the correct *C.B.* standard in their respective opening and answering briefs.  *See* ECF No. 36 at 11–18; ECF No. 37 at 25–28. Plaintiff, however, applies the *C.B.* standard in his Reply Brief.  ECF No. 38 at 9–10.

Plaintiff further includes citations to the record regarding the various benefits P.M. received from his instruction at MAC in the section of his opening brief on whether MAC or the Public Separate Facility was the LRE.  ECF No. 36 at 32. Plaintiff's citations generally point to evidence in the record relating to the quality of the instruction that P.M. received at MAC and are summarized below.

Documentation from MAC for the first quarter of the 2019–2020 schoolyear, *i.e.*, the time period for which Plaintiff seeks reimbursement, shows that P.M. improved in his speech and occupational skills (including writing, use of scissors and writing implements, typing, brushing his teeth, tying knots, and toilet hygiene) as a result of his instruction at MAC.  ECF No. 13-3 at 9–17.  MAC had staff specially trained to work with P.M., including staff who were safety care trained. ECF No. 17-1 at 114.  At MAC, P.M. was exposed to thirteen-to-fifteen other students in the same room.  *Id.* at 92.  MAC utilized community-based instruction, and gave P.M. regular opportunities to go into the community to buy lunch, where he would practice selecting his food, ordering, and paying for lunch.  *Id.* at 122.  In addition to daily community outings, MAC hosted monthly or bimonthly adaptive kayaking, along with snorkeling, swimming, and other activities.  *Id.* at 122–23.

The Court also finds that the Progress Report MAC prepared regarding P.M.'s performance during the first quarter of the 2019–2020 schoolyear is relevant to the issue of whether MAC was a proper placement.  ECF No. 13-3 at

19.  P.M.'s penmanship improved during this period as he was able to copy three-to-four-letter words and form both lowercase and uppercase letters while writing. *Id.*  P.M.'s counting abilities improved, as did his reading, articulation, and communication skills.  *Id.*

The AHO's first basis for her finding that Plaintiff failed to prove that MAC was a proper placement was that MAC did not have an identifiable behavior plan in place for P.M. during the time period in question and that MAC's practices relating to behavioral plans failed to comply with applicable guidelines and best practices.  ECF No. 12-16 at 49.  Second, the AHO found that MAC's recordkeeping and billing practices raised concerns and do not support an award of full tuition.  *Id.*  Third, the AHO found that MAC's data collection practices regarding P.M.'s behavior were "questionable."  *Id.* at 50.  Fourth, the AHO found that P.M. had developed new behaviors that were potentially dangerous to himself. *Id.*  Finally, the AHO found that MAC did not have plans to transition P.M. to receiving less services, despite its staff's assertion that P.M.'s behaviors and performance had improved.  *Id.*

Each of the concerns the AHO noted are legitimate.  But while the AHO's concerns may certainly be relevant to the issue of whether P.M. should ultimately be placed at MAC as his LRE, they do not cause MAC to fall short under the *C.B.* standard, which simply requires "educational instruction specially designed to

20

meet [P.M.'s] unique needs" with "services as are necessary to permit [P.M.] to benefit from instruction." *C.B.*, 635 F.3d at 1159 (internal quotation marks and citation omitted). Thus, the question is ultimately whether MAC was a "proper" placement following the DOE's failure to provide P.M. with a FAPE once the schoolyear started—not whether MAC was the LRE for P.M. *C.B.*, 635 F.3d at 1159–60. Plaintiff identifies ample evidence in the record showing that MAC (the DOE's prior placement for P.M.) satisfied this standard.

The Court therefore finds by a preponderance of the evidence that P.M.'s placement at MAC for the period between August 2019 and October 2019 was proper.

2.   Equitable Considerations

Where a plaintiff satisfies the two criteria for reimbursement, the district court then must exercise its "broad discretion" and weigh "equitable considerations" to determine whether, and how much, reimbursement is appropriate. *C.B.*, 635 F.3d at 1159 (internal quotation marks and citation omitted). Here, the AHO determined that Plaintiff was not entitled to *any* reimbursement under the equitable considerations of the IDEA. ECF No. 12-16 at 50–52. The AHO's determination was based on (1) Plaintiff's conduct and (2) MAC's billing practices.

21

First, the AHO determined that Plaintiff was not entitled to reimbursement because of her finding that Plaintiff (with assistance from the MAC team) put the DOE in the position of having to choose between conflicting procedural violations—holding an IEP meeting without Plaintiff's presence or delaying the IEP meeting such that there would be no IEP in at the beginning of the schoolyear. ECF No. 12-16 at 51–52.  The AHO noted Plaintiff and the MAC team's prior experience in IEP proceedings (including due process hearings) in support of her finding.  *Id.* at 52.

The AHO's conclusion is not supported by the record.  First, the DOE acceded to Plaintiff's request that the IEP meeting that the DOE wanted to hold in January 2019 be held in May 2019.  *Id.* at 10.  Second, the May 2019 IEP meeting was continued because both the MAC and DOE BCBAs were sick, and not due to any dilatory action on Plaintiff's part.  *Id.* at 11.  Third, the AHO noted that the IEP meeting was further continued from June 7, 2019 to June 17, 2019 for unknown reasons.  *Id.* at 13.  While Plaintiff did file a State complaint the day before the scheduled June 17, 2019 IEP meeting (just as he filed a due process complaint the day before the October 30, 2019 IEP meeting), the AHO found that the DOE nonetheless decided to continue the meeting pending a decision on Plaintiff's complaint.  *Id.*  And the AHO did not find that Plaintiff's June 16, 2019 State complaint was filed in bad faith.  *See generally id.*  Thus, while it may be the case

that Plaintiff contributed to the delays in the IEP process that resulted in the lack of

an IEP at the start of the 2019–2020 schoolyear, at least some of the delays cannot

be attributed to any wrongdoing on Plaintiff's part.

In order to determine whether equitable considerations support

reimbursement (including the possibility of partial reimbursement), the Court must

consider the conduct of both Plaintiff and the DOE.  *See Parents of Student W. v.

Puyallup Sch. Dist., No. 3*, 31 F.3d 1489, 1496 (9th Cir. 1994) ("The conduct of

both parties must be reviewed to determine whether relief is appropriate." (internal

quotation marks and citation omitted)); *see also Dep't of Educ. v. L.S.*, No. 18-cv-

00223 JAO-RT, 2019 WL 1421752, at *16 (D. Haw. Mar. 29, 2019) (reducing a

parent's reimbursement award by twenty-five percent due to the parent's lack of

cooperation).  The Court finds that Plaintiff is not at fault for the DOE's failure to

have an IEP in place when the 2019–2020 schoolyear began.  The continuances

from May 14, 2019 to June 7, 2019 and then from June 7, 2019 to June 17, 2019

stemmed from the BCBAs' absences and unknown reasons, respectively.  Plaintiff

is further not at fault for the continuance following his filing of the June 16, 2019

State complaint as (1) there is no evidence that he filed it in bad faith; and (2) the

DOE agreed to the continuance.  After the State complaint was resolved, however,

the DOE promptly offered to hold the IEP meeting on any of four dates between

September 10 and September 30, 2019.  ECF No. 15-4 at 25.  Yet, Plaintiff was

23

unavailable to meet until October 30, 2019.  *Id.* at 27.  Thus, Plaintiff was responsible for the DOE's failure to have an IEP in place for the month of October 2019.

The Court concludes that it is equitable for the DOE to reimburse Plaintiff for MAC's tuition for the period from August 1, 2019 through September 20, 2019 (the latter date being the midpoint in the range of IEP meeting dates the DOE offered in September 2019).[4]

Second, the AHO found that Plaintiff failed to demonstrate the reasonableness of the requested reimbursement because there were no invoices or itemized bills for August 2019 and September 2019 and because it appeared that MAC billed the DOE for certain days in which P.M. was either absent or not receiving services from MAC.  In *C.B.*, the Ninth Circuit explained that a

---

[4]  In coming to its conclusion that September 20, 2019 is the date on which reimbursement ends, the Court considered the adverse incentives that may arise in subsequent cases if the Court were to set an end date of either September 10, 2019 (the earliest IEP meeting date the DOE offered) or September 30, 2019 (the latest IEP meeting date the DOE offered).  The Court does not want to signal to the DOE that it can avoid liability for tuition reimbursement in cases in which it failed to provide a FAPE simply by offering to hold an IEP meeting at the earliest possible time without regard to the practicability of holding an IEP meeting on very short notice.  Nor does the Court want to punish the DOE for offering multiple dates by setting the last date offered as the cut-off date.  Finally, the Court does not want to incentivize parents to prolong the IEP process by encouraging them to select the latest possible IEP date in order to maximize the amount of private tuition they can recover.  The Court does not suggest that Plaintiff or the DOE would engage in such gamesmanship, but is mindful of the effect that its ruling may have on subsequent cases.

reimbursement award may be *reduced* where the private placement's billing is

unreasonable:

> Equity surely would permit a reduction from full reimbursement if Program A provides too much (services beyond required educational needs), or if it provides some things that do not meet educational needs at all (such as purely recreational options), or if it is overpriced, but equity does not require a reduction in reimbursement just because a parent or guardian cannot afford to give the child everything (or cannot find a program that does).

*C.B.*, 635 F.3d at 1160.  The AHO should therefore have reduced Plaintiff's

reimbursement award to eliminate any excess or unreasonable charges rather than

determining that Plaintiff was not entitled to any reimbursement whatsoever.  As

the AHO is better posed to review the particulars of MAC's billing, the Court will

remand the case to the AHO so that Plaintiff's tuition reimbursement award can be

*reduced* to the extent required by the equities.

In summary, Plaintiff satisfies the *C.B.* test for tuition reimbursement for

August 2019 through October 2019 as it is undisputed that the DOE denied P.M. a

FAPE during this time and because of the Court's finding that MAC was a proper

placement.  Both of the equitable considerations raised by the AHO are relevant,

but neither support a complete elimination of Plaintiff's tuition reimbursement.  On

remand, the AHO should award Plaintiff tuition reimbursement for the period from

August 1, 2019 through September 20, 2019,[5] but may reduce the tuition award in order to eliminate any unjustifiable billings from MAC.  The AHO shall only reduce Plaintiff's reimbursement award to account for unjustifiable billings that took place during the reimbursement period, that is, August 1, 2019 through September 20, 2019.

### B.    Plaintiff's Right to Reimbursement under the Stay Put Rule

Plaintiff argues that he is also entitled to reimbursement for tuition from August 2019 to October 2019 under the stay put rule.  The stay put rule is the following provision of the IDEA:

> **(j) Maintenance of current educational placement**
> Except as provided in subsection (k)(4), during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed.

20 U.S.C. § 1415(j); *see also Clovis Unified Sch. Dist. v. Cal. Office of Admin. Hearings*, 903 F.2d 635, 640 (9th Cir. 1990) ("Under the 'stay put' provisions of

---

[5]  The fact that the record did not include evidence of MAC's billings for August and September of 2019 does not preclude Plaintiff from receiving a reimbursement award.  *See Anchorage Sch. Dist. v. M.P.*, 689 F.3d 1047, 1060 (9th Cir. 2012) ("We likewise defer to the hearing officer's determination that M.P.'s parents are entitled to submit for review by the IEP team and the [school district] the expenses incurred from January 1, 2009 through May 2009 so that his parents may be reimbursed for those tutoring services that were appropriate under the IDEA.").

20 U.S.C. § 1415(e)(3), a child is to remain in 'the then current educational placement of such child' during the pendency of review proceedings.").[6]  The DOE argues that the stay put rule is inapplicable because it would apply only to the period *after* Plaintiff filed his October 29, 2019 due process complaint.  ECF No. 37 at 28.

The Court agrees with the DOE.  Plaintiff cites *Clovis* for the proposition that he is entitled to reimbursement under the stay put rule because "AHO [Young] determined that the placement [at MAC] was appropriate, and the DOE effectively agreed to that placement."  ECF No. 36 at 12–13 (citing *Clovis*, 903 F.2d at 641)).  Plaintiff further cites *K.D. v. Dep't of Educ.*, 665 F.3d 1110 (9th Cir. 2011), for the proposition that MAC remained P.M.'s appropriate placement after the 2017–2018 schoolyear because P.M.'s placement at MAC was bilateral and not time-limited.[7]  ECF No. 36 at 13 (citing *K.D.*, 665 F.3d at 1118).  *K.D.* explains, however, that the stay put rule "can have no effect" when "no due process hearing was pending."

---

[6]  When *Clovis* was decided, Section 1415(j) was codified at Section 1415(e)(3), which employed text substantively similar to the quoted language.

[7]  AHO Young ordered the DOE to reimburse Plaintiff for P.M.'s tuition at MAC beginning on June 15, 2018 for extended school year services for the 2017–2018 schoolyear, and for P.M.'s educational program for the duration of the 2018–2019 schoolyear, including extended school year services.  ECF No. 14-17 at 66.  AHO Young's decision was therefore clearly limited to the 2018–2019 schoolyear and a portion of the preceding schoolyear.

27

*K.D.*, 665 F.3d at 1117.  Thus, Plaintiff has no cognizable claim to reimbursement under the stay put rule for the period prior to Plaintiff's filing of the due process complaint.

In his Reply Brief, Plaintiff argues for the first time that he is at least entitled to reimbursement for the first twelve days of August 2019 as his June 16, 2019 State complaint was pending during this period.  ECF No. 38 at 9.  In its Surreply, the DOE argues that the stay put rule is inapplicable as the June 16, 2019 complaint was not the type of administrative due process complaint to which the stay put rule applies.  *See generally* ECF No. 41.  Indeed, MAC's president described the complaint in a cover email to the DOE as a "State Complaint Letter," ECF No. 18-1 at 154, and the letter itself did not include a request for a due process hearing, *id.* at 155–57.  The Court agrees with the DOE that this is not the type of complaint to which the stay put rule applies.  *See* HAR § 8-60-72(a) ("Except as provided in section 8-60-78, during the pendency of any administrative or judicial proceeding *regarding a due process complaint notice requesting a due process hearing under section 8-60-61,* unless the department and the parents of the student agree otherwise, the student involved in the complaint shall remain in his or her current educational placement." (emphasis added)); *Joshua A. v. Rocklin Unified Sch. Dist.*, 559 F.3d 1036, 1038 (9th Cir. 2009) (explaining that the stay put rule in 20 U.S.C. § 1415(j) applies to "[f]our kinds of proceedings . . .

28

mentioned in § 1415:  (1) mediation; (2) due process hearings; (3) state administrative review[8]; and (4) 'a civil action' begun by a complaint under the IDEA").  Instead, the June 16, 2019 complaint was a "State complaint" filed under subchapter 7 of Hawaii's implementing IDEA regulations.  *See* HAR § 8-60-54. The regulation governing the procedures for State complaints distinguishes between such complaints and complaints involving due process hearings (which trigger the stay put rule).  *See* HAR 8-60-53(c) (referencing "[c]omplaints filed under this section *and* due process hearings under section 8-60-61 and sections 8-60-75 through 8-60-77" (emphasis added)).

The AHO therefore did not err in holding that Plaintiff was not entitled to private tuition reimbursement under the stay put rule.

## C.      The Propriety of the IEP Team

Plaintiff argues that the October 30, 2019 IEP meeting was invalid because it did not have a general or special education teacher from what Plaintiff refers to as

---

[8]  When a due process hearing "is conducted by a local educational agency, any party aggrieved by the findings and decision rendered in such a hearing may appeal such findings and decision to the State educational agency."  20 U.S.C. § 1415(g)(1).  In such instances, "[t]he State educational agency shall conduct an impartial review of the findings and decisions appealed."  *Id.* § 1415(g)(2).  This provision is inapplicable in Hawaiʻi as "Hawaii has decided to operate its public schools through a single statewide school district."  *Michael P. ex rel. Courtney G. v. Dep't of Educ.*, 656 F.3d 1057, 1070 (9th Cir. 2011) (Clifton, J., dissenting).

P.M.'s home school.[9]  According to Plaintiff, the DOE should have included team members from the Baldwin Complex (the home school district for students living in Wailuku, where P.M. lived at the time of the IEP meeting) and not just team members from Lokelani in Kihei, P.M.'s prior public placement.  ECF No. 36 at 19–20.  The AHO rejected Plaintiff's argument because "it is undisputed . . . that [P.M.] was not going to be placed at one of the [DOE] public schools to which [Plaintiff] refer[s] as home schools."  ECF No. 12-16 at 39.

The IDEA and parallel federal and state regulations require "a representative of the local education agency" who satisfies the following criteria:

> **(I)** is qualified to provide, or supervise the provision of, specially designed instruction to meet the unique needs of children with disabilities;
> **(II)** is knowledgeable about the general education curriculum; and
> **(III)** is knowledgeable about the availability of resources of the local educational agency[.]

20 U.S.C. § 1414(d)(1)(B)(iv) (formatting added); *see also* 34 C.F.R. § 300.321(a)(4); HAR § 8-60-45(a)(4).  And Plaintiff does not cite any cases in which a court has held that a school district must send representatives of a student's local school (and not simply representatives of the "local education agency") to an IEP meeting.  The DOE—the local education agency for the entire

---

[9]  The AHO stated that Plaintiff "testified that although [P.M.] had moved in with him in July 2019, he had not told the [DOE] school personnel until the start of the IEP meeting in October."  ECF No. 12-16 at 39.

state that would be offering a FAPE to P.M.—sent representatives to the IEP meeting, ECF No. 12-16 at 39, just not representatives from the schools closest to P.M.'s new residence.

The AHO further found that Bell and Robinson had the requisite knowledge and qualifications to represent the DOE at the IEP meeting.  ECF No. 12-16 at 39. While Plaintiff argues that the DOE IEP team members were unable to address Plaintiff's safety concerns about the implementation of the IEP on another campus; that a special education classroom setting was rejected without considered discussion of Plaintiff's safety concerns; that a new team would have promoted collaboration as the prior team members were adversarial; and that the presence of Lokelani team members displayed that the DOE had predetermined P.M.'s placement, ECF No. 36 at 19–21, none of these arguments speak to the issue of whether the DOE supplied team members with the knowledge and qualifications required under the IDEA.

The AHO therefore did not err in holding that the IEP meeting was not invalid on account of which DOE team members were present.

**D.    Prior Written Notice**

A local educational agency must provide a PWN to a child whenever the agency:  "(A) proposes to initiate or change; or (B) refuses to initiate or change,

the identification, evaluation, or educational placement of the child, or the

provision of a free appropriate public education to the child." 20 U.S.C. §

1415(b)(2)(B)(3) (emphasis omitted). The IDEA requires that a PWN contain the

following information:

> **(A)** a description of the action proposed or refused by the agency;
> **(B)** an explanation of why the agency proposes or refuses to take the action and a description of each evaluation procedure, assessment, record, or report the agency used as a basis for the proposed or refused action;
> **(C)** a statement that the parents of a child with a disability have protection under the procedural safeguards of this subchapter and, if this notice is not an initial referral for evaluation, the means by which a copy of a description of the procedural safeguards can be obtained;
> **(D)** sources for parents to contact to obtain assistance in understanding the provisions of this subchapter;
> **(E)** a description of other options considered by the IEP Team and the reason why those options were rejected; and
> **(F)** a description of the factors that are relevant to the agency's proposal or refusal.

20 U.S.C. § 1415(c)(1) (formatting added); *see also* 34 C.F.R. § 300.503(b)

(similar); HAR § 8-60-58(b) (similar).

1. PWN Regarding a Change in Placement Prior to the 2019–2020 Schoolyear

Plaintiff argues that the DOE failed to provide a PWN during the 2018–2019

schoolyear when it took the position that P.M.'s placement at MAC lasted only

through the 2018–2019 schoolyear. ECF No. 36 at 23. Then, in his Reply Brief,

Plaintiff argues that the DOE should also have provided a PWN in January 2019 to

inform Plaintiff that the DOE would be initiating a placement discussion, evaluating the appropriateness of MAC, and considering removing P.M. from his private placement.  ECF No. 38 at 15.

The AHO rejected Plaintiff's argument regarding the need for a PWN prior to the completion of the IEP meeting for the 2019–2020 school year for two reasons:  (1) the May 2019 IEP meeting was continued by agreement so that it could be completed with the BCBAs present; and (2) the DOE had not reached a decision about P.M.'s placement until the end of the October 2019 IEP meeting. ECF No. 12-16 at 41–42.

The Court affirms the AHO's ruling.  Robinson's January 15, 2019 letter to Plaintiff notified him that the DOE intended to develop its annual IEP for P.M. following its observation of P.M. at MAC.  ECF No. 15-4 at 7.  Crucially, Robinson stated:  "Pursuant to the Hearing Officer's decision from November 7, 2018, the DOE will be paying for [P.M.]'s tuition at [MAC] throughout the 2018-19 school year including ESY."  *Id.*  Thus, the DOE notified Plaintiff that (1) it would be reviewing P.M.'s IEP; and (2) it would be paying for MAC's tuition through the 2018–2019 schoolyear.  But there is no evidence that the DOE had initiated a change to P.M.'s placement prior to the actual IEP meeting.  Hence, the DOE was not required to issue Plaintiff a PWN at any point prior to its placement decision following the October 30, 2019 IEP meeting.

2.      PWN of the DOE's Determination of P.M.'s LRE Following the
         October 30, 2019 IEP Meeting

Plaintiff argues that the DOE failed to provide Plaintiff with a PWN that

complied with the IDEA following its determination that P.M.'s LRE was the

Public Separate Facility.  Specifically, Plaintiff argues that the PWN was deficient

because it did not include information "'pertaining to the program'" along with a

collaborative transition plan to the new program, and the reasons for proposing it.

ECF No. 36 at 22.

The AHO determined that the PWN "contained sufficient information

regarding the change in [P.M.]'s educational placement and the options discussed

at the IEP meeting."  ECF No. 12-16 at 41.  The PWN contained a "summary of

the discussion for the educational and non-educational benefits [of the DOE's

proposed placement]."  *Id.* at 20.  The Court reviewed the PWN, ECF No. 15-3 at

26–29, and agrees with the AHO's conclusion that the PWN complies with the

requirements established by the IDEA.  *See B.V. v. Dep't of Educ.*, 451 F. Supp. 2d

1113, 1132 (D. Haw. 2005) (holding that a challenge to a PWN "lack[ed] factual

support" when the PWN "follow[ed] the structure set forth by § 1415 and

include[d] all the required elements").

The AHO therefore did not err in rejecting Plaintiff's argument that the DOE

committed a procedural violation of the IDEA by failing to issue a required PWN

and/or issuing a legally deficient PWN.

34

E.     **Predetermination**

Plaintiff argues that the DOE violated the IDEA by predetermining P.M.'s

placement at the Public Separate Facility.  "A school district violates the IDEA if it

predetermines placement for a student before the IEP is developed or steers the IEP

to the predetermined placement."  *K.D.*, 665 F.3d at 1123.  Here, Plaintiff argues

that three of the DOE's actions show predetermination:  (1) the DOE's decision to

allow services to lapse and cease paying for MAC, (2) the selection of Robinson

and Bell as IEP team members, and (3) the contents of the LRE worksheet.  ECF

No. 36 at 24–25.

Plaintiff argues that if the DOE were actually considering MAC as an option

for the 2019–2020 schoolyear, it would have maintained the status quo by paying

for MAC until a new IEP could be developed.  *Id.* at 24.  This argument is not

supported by the record.  The DOE took the position in January 2019 that it was

required to pay for MAC tuition through the 2018–2019 schoolyear and attempted

to initiate the IEP process that month.  ECF No. 15-4 at 7.  Thus, when the DOE

first initiated efforts to develop P.M.'s IEP for the 2019–2020 schoolyear, P.M.

still had over six months left at MAC.  Absent any evidence in the record to the

contrary, the DOE's decision to refuse to pay for MAC is consistent with

Robinson's testimony that the DOE was only required and authorized to pay for

MAC through the 2018–2019 schoolyear, ECF No. 24-1 at 59–60, and does not prove that the DOE had predetermined P.M.'s placement.

The Court further rejects Plaintiff's argument that the AHO erred in refusing to allow Plaintiff's counsel to continue to question Robinson at the due process hearing about the motivation for ceasing payment of MAC tuition after the 2018-2019 schoolyear ended.  ECF No. 36 at 24; ECF No. 24-1 at 59–64.  Robinson had testified that the DOE had ceased making payments to MAC because the DOE had understood AHO Young's order to only require that the DOE pay for P.M.'s tuition at MAC through the 2018–2019 schoolyear.  ECF No. 24-1 at 59–60.  The DOE's position regarding its obligation to pay for P.M.'s tuition at MAC once the 2019–2020 schoolyear commenced was therefore clear.  *See id.*

Plaintiff argues that the selection of Robinson and Bell as IEP team members and as the offeror of the FAPE indicated that placement was steered toward the Public Separate Facility.  ECF No. 36 at 25.  Plaintiff argues that neither were familiar with the resources of the local schools in Wailuku and that Bell should not have presided over the IEP meeting once it was determined that P.M.'s home school was no longer Lokelani.  *Id.*  The Court agrees with the DOE that Robinson and Bell's participation at the October 30, 2019 IEP meeting could not reasonably be considered evidence of predetermination as Robinson and Bell

first learned that P.M.'s residence had changed at that same meeting.  ECF No. 37 at 32 n.19; ECF No. 12-16 at 16.[10]

Finally, Plaintiff argues that the LRE worksheet is evidence of predetermination because "the advantages of the public separate facility fill two full lines and fill the sections that should have referenced MAC" and because "[a]ll of the academic and non-academic advantages of MAC are omitted from the sheet."  ECF No. 36 at 25.  The AHO determined that "[u]sing the assistance of a worksheet, the [IEP] team discussed the educational placements [sic] of placement, the non-academic benefits of such placement, and the effect of the student on the teacher and the children in the placement."  ECF No. 12-16 at 43.  After reviewing the worksheet, ECF No. 18-1 at 152, the Court rejects Plaintiff's argument that the worksheet shows that the DOE predetermined P.M.'s placement.  While the worksheet is not terribly organized,[11] the IEP team discussed the educational and

---

[10]  At oral argument, Plaintiff's counsel argued that the transcript from the October 30, 2019 IEP meeting indicates that the DOE had already known about P.M.'s change in residence prior to the hearing.  It is clear from the transcript, however, that the DOE was aware prior to the meeting that Plaintiff resided in Wailuku, but not that P.M. resided in Wailuku with Plaintiff.  *See* ECF No. 16-2 at 128–30.

[11]  The confusion arises from the fact that the worksheet was filled in by hand, and a box was drawn around the adjoining sections relating to the academic and non-academic benefits of placement in a Public Separate Facility and a Private Separate Facility.  ECF No. 18-1 at 152.  While Plaintiff asserts that MAC's benefits were omitted from the worksheet, the Court is not convinced this is the case.  There is no testimony confirming that this is the case and at least some of the benefits listed

(continued . . .)

non-educational benefits of MAC at the October 30, 2019 IEP meeting.  ECF No.

17-1 at 114–23.  Even if the handwritten worksheet did not fully and accurately

reflect the entirety of the discussion of MAC's academic and non-academic

benefits, Plaintiff has not proven that the DOE predetermined P.M.'s placement.

The AHO concluded, "[b]oth the school IEP team members and the [MAC] IEP

team members provided input and [Bell] considered the factors of each placement

before coming to a decision that [P.M.] would be placed at the Public Separate

Facility."  ECF No. 12-16 at 43–44 (footnote omitted).  The AHO's conclusion is

supported by the record—specifically, the transcript from the October 30, 2019

IEP meeting—and undermines Plaintiff's argument that P.M.'s placement was

predetermined.  *See K.D.*, 665 F.3d at 1123 (rejecting predetermination argument

when the record revealed that the DOE considered and reasonably rejected other

options).

  The AHO therefore did not err in rejecting Plaintiff's argument that the DOE

predetermined P.M.'s placement at the Public Separate Facility.

---

(. . . continued)
for the Private Separate Facility do indeed appear to pertain to MAC, not the
Public Separate Facility, including the "specialized curriculum" and "social skills –
social interactions."  *Id.*; *see* ECF No. 17-1 at 114–15, 123.  And Plaintiff neglects
to mention that there is a line connecting the text, "structured social integration"
near the bottom of the worksheet with the box corresponding to the non-academic
benefits at the Private Separate Facility.  ECF No. 18-1 at 152.

**F.     Parental Participation at the October 30, 2019 IEP Meeting**

Plaintiff argues that the DOE blocked parental participation at the October

30, 2019 IEP meeting by failing to consider behavioral assessments from 2018.

ECF No. 36 at 27–28.  Plaintiff further argues that P.M.'s placement decision was

made by Bell alone and that Bell failed to consider other input.  *Id.* at 28.

"Parental participation in the IEP and educational placement process is

critical to the organization of the IDEA." *Doug C.*, 720 F.3d at 1043 (citations

omitted).  "[P]rocedural inadequacies that result in the loss of educational

opportunity, or seriously infringe the parents' opportunity to participate in

the IEP formulation process, clearly result in the denial of a FAPE." *L.M.*, 556

F.3d at 909 (alteration in original) (internal quotation marks and citation omitted).

The AHO concluded that the DOE "provided every opportunity for both

[Plaintiff] and the IEP team from [MAC] to participate in [P.M.]'s IEP process."

ECF No. 12-16 at 44.  After reviewing the transcript from the IEP meeting in

question, the Court affirms the AHO's conclusion.  While Plaintiff was able to

identify moments in the meeting in which the DOE team members were reluctant

to discuss the 2018 behavioral assessments and the 2018 due process hearing, the

record does not show a denial of parental participation.  *See, e.g.*, ECF No. 16-2 at

169–70 ("MS. VIGNEUX:  Mr. Clarfeld, do you have any concerns you would

like me to note about the behavior?  MR. CLARFELD:  No.  He just -- like I said before, nothing about that.").

Moreover, the fact that the DOE offered a placement with which Plaintiff disagrees does not prove a denial of parental participation.  *See J. G. v. Hawaii, Dep't of Educ.*, CIV. NO. 17-00503 DKW-KSC, 2018 WL 3744015, at *17 (D. Haw. Aug. 7, 2018), *aff'd*, 772 F. App'x 567 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 957 (2020) ("The mere existence of a difference in opinion between a parent and the rest of the IEP team is not sufficient to show that the parent was denied full participation in the process, nor that the DOE's determination was incorrect." (internal quotation marks and citation omitted)).

The AHO therefore did not err in rejecting Plaintiff's argument that the DOE denied Plaintiff meaningful participation in the October 30, 2019 IEP meeting.

## G.   Determination of the LRE

Plaintiff argues that the DOE denied P.M. a FAPE by determining that the Public Separate Facility—rather than MAC—was P.M.'s LRE.  Specifically, Plaintiff argues that the AHO made the following errors in upholding the DOE's determination:  (1) relying on post-hoc justifications for P.M.'s placement; (2) failing to give appropriate weight to the fact that the Public Separate Facility had only two students, both severely disabled and nonverbal; (3) failing to give appropriate weight to evidence showing that P.M. could not tolerate a large

campus and would not succeed academically at such a campus; and (4) failing to

consider the positive aspects of MAC.  ECF No. 36 at 30–32.

The IDEA requires each state to establish procedures to assure that:

> [t]o the maximum extent appropriate, children with disabilities . . . are educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.

20 U.S.C. § 1412(a)(5)(A).  This LRE provision "sets forth Congress's preference

for educating children with disabilities in regular classrooms with their peers."

*Sacramento City Unified Sch. Dist., Bd. of Educ. v. Rachel H.*, 14 F.3d 1398, 1403

(9th Cir. 1994) (citations omitted).  School districts must ensure that a "continuum

of alternative placements is available to meet the needs of children with

disabilities," including "instruction in regular classes, special classes, special

schools, home instruction, and instruction in hospitals and institutions."  34 C.F.R.

§ 300.115(a), (b)(1).

In order to analyze whether a school district provided a child with a FAPE

by placing the child in his or her LRE, courts in the Ninth Circuit employ a four-

factor balancing test, which considers "(1) the educational benefits of placement

full-time in a regular class; (2) the non-academic benefits of such placement; (3)

the effect [that the disabled child] had on the teacher and children in the regular class; and (4) the costs of mainstreaming [the child]." *Rachel H.*, 14 F.3d at 1404.

The AHO first concluded that the DOE followed the process of developing P.M.'s IEP and educational placement after going through the *Rachel H.* factors. ECF No. 12-16 at 46. The AHO held that the DOE established that the services and supports necessary for the implementation of P.M.'s IEP and that Plaintiff failed to demonstrate that the programs and services available to P.M. at MAC would not be available to P.M. at the Public Separate Facility. *Id.* at 47.

The evidence adduced at the due process hearing supports the AHO's conclusion. With respect to the Public Separate Facility's educational benefits, the AHO found that the SPED Teacher, a licensed education teacher, creates an appropriate curriculum for each student based on the student's educational level, needs, and IEP, using grade level standards based on the educational guidelines of the State of Hawaii's common core standards. *Id.* at 21. With respect to non-academic benefits, the AHO found that the Public Separate Facility is able to provide supports such as socialization with neurotypical peers from a neighboring intermediate school, community-based instruction, and a functional program to teach life skills to students, as well as the services of RBTs and BCBAs, as required by P.M.'s IEP. *Id.* at 21–23. It is further clear from the transcript of the October 30, 2019 IEP meeting that the IEP team considered the effect P.M.'s

42

placement would have on other students and teacher. ECF No. 17-1 at 108–14. The AHO noted that the IEP team did not discuss the cost of mainstreaming P.M., but she concluded that this did not amount to a deprivation of a FAPE as it did not result in a loss of educational opportunity or significant imposition on the parents' right to participate. *See* ECF No. 12-16 at 46 n.223 (citing *K.K. v. Hawaii*, CIV NO. 14-00358 JMS-RLP, 2015 WL 4611947, at *20 (D. Haw. July 30, 2015)). The evidence in the record supports the AHO's conclusion that the DOE properly decided that the Public Separate Facility was P.M.'s LRE.

Plaintiff argues that the AHO failed to judge the appropriateness of P.M.'s placement based only on the information available to the IEP team at the time of the IEP meeting, and instead relied on the SPED Teacher's testimony, even though the SPED Teacher testified that he was not consulted prior to the IEP meeting, did not provide information for any of the discussions, and had no contact with the IEP team. ECF No. 36 at 29–30. Plaintiff's argument is based on a misapprehension of how the AHO utilized the SPED Teacher's testimony. The AHO credited the SPED Teacher's testimony that: the Public Separate Facility can implement the requirements of P.M.'s IEP; she has extensive experience teaching special education in the DOE and has additional experience with autistic students; she has been successful in implementing IEPs for students who have been reintegrated back into the public school system; and she has created educational programs

based on students' IEPs and unique needs and integrates activities such as reverse inclusion programs, life skills programs, and community-based instruction.  ECF No. 12-16 at 47–48.  Even if the SPED Teacher did not personally participate in the IEP meeting, Plaintiff failed to prove that the DOE did not have the knowledge and information the SPED Teacher possessed regarding the benefits and services the Public Separate Facility could offer P.M.  Thus, Plaintiff's argument that the DOE's placement decision could not have been justified at the time it was made is unsupported by the record.

Plaintiff argues that the DOE failed to properly determine P.M.'s LRE because the Public Separate Facility only included two students, both of whom were severely disabled and nonverbal.  ECF No. 36 at 31.  Yet, the AHO made a number of findings relating to the social supports that would be in place for P.M. at the Public Separate Facility, including access to general education students, inclusion or reverse inclusion opportunities, and community-based instruction. ECF No. 12-16 at 22.  The DOE correctly points out that District Judge Watson upheld an administrative hearing officer's conclusion that this same Public Separate Facility was another student's LRE as it provided that student with "more access to neurotypical peers and the community as a whole" than MAC.  *J. G.*, 2018 WL 3744015, at *1, 11.  The Court therefore affirms the Decision that the Public Separate Facility had sufficient social supports available to P.M.

Plaintiff argues that the DOE and the AHO failed to consider evidence from a Functional Behavior Assessment from March 2018[12] and a Behavior Support Plan from May 2018, which, according to Plaintiff, show that P.M. could not tolerate a large campus.  ECF No. 36 at 31.  The Court has reviewed both documents, ECF No. 14-3 at 2–42, but finds that the two reports simply do not support the conclusions Plaintiff draws therefrom.  The reports detail the various behavioral challenges that P.M. faced at his prior *special education* placement; they do not analyze how P.M. had fared or would fare at the Public Separate Facility.  *See generally id.*  The Court does not see anything in the two reports (nor does Plaintiff point to specific portions of the reports) that demonstrate that the DOE's determination of P.M.'s LRE was contrary to law.  While Plaintiff identifies particular behavioral risks associated with the Public Separate Facility, ECF No. 36 at 31–32, the AHO's conclusion that the Public Separate Facility has the resources to provide the supports and services required by P.M.'s IEP is supported by the record.

Finally, Plaintiff argues that the Court should reverse the AHO's ruling regarding P.M.'s LRE because MAC is a safe and beneficial environment for P.M.

---

[12]  The March 2018 report was authored by BCBA Beau Laughlin.  ECF No. 14-3 at 28.  Despite arguing that the DOE and the AHO failed to consider Mr. Laughlin's report, Plaintiff argued in his June 16, 2019 complaint that Mr. Laughlin "manipulated the data on [P.M.]'s behavior."  ECF No. 18-1 at 156.  Plaintiff further objected to Mr. Laughlin's attendance at P.M.'s IEP meeting.  *Id.*

for the reasons summarized in Section III.A.1 of this Order.  While the Court has found that MAC was a *proper* placement following the DOE's failure to provide P.M. with a FAPE, this does not mean that MAC was necessarily P.M.'s LRE. The Court concludes that both the DOE and the AHO gave appropriate consideration to the comparative benefits of both MAC and the Public Separate Facility and reached the conclusion that the Public Separate Facility was P.M.'s LRE based on the *Rachel H.* factors.

The AHO therefore did not err in rejecting Plaintiff's argument that the DOE unlawfully determined the Public Separate Facility to be P.M.'s LRE.

## IV.  CONCLUSION

For the reasons set forth above, the Court REVERSES the AHO's determination that Plaintiff is not entitled to reimbursement of private tuition from August 2019 through October 2019, during which time the DOE failed to provide P.M. with a FAPE.  The Court concludes that Plaintiff is entitled to reimbursement for P.M.'s tuition at MAC for the period from August 1, 2019 through September 20, 2019.  On remand, the AHO may reduce Plaintiff's reimbursement award to eliminate any unjustifiable billings from MAC, so long as the unjustifiable billings relate to services provided during the reimbursement period.

The remainder of the AHO's Decision is AFFIRMED.

The Clerk is directed to close this case.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, January 15, 2021.

Jill A. Otake
United States District Judge

Civil No. 20-00234 JAO-KJM, *Alex Clarfeld, individually and on behalf of his minor child, P.M. v. Department of Education, State of Hawaii*; ORDER AFFIRMING IN PART AND REVERSING IN PART ADMINISTRATIVE HEARING OFFICER'S APRIL 27, 2020 DECISION